# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 14, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0497-MR

NATHANIEL AARON HARPER        APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.        HONORABLE THOMAS L. TRAVIS, JUDGE
NO. 17-CR-01210

COMMONWEALTH OF KENTUCKY        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Nathaniel Aaron Harper (Harper) was convicted of wanton murder, fleeing and evading, and receiving stolen property. He now appeals his convictions and resulting concurrent sentence of thirty years' imprisonment as a matter of right.[1] After review, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

On August 29, 2017, at around 12:40 am, Matthew Hughes (Hughes) was awoken by his dog barking. Hughes, who lives in a rural part of Anderson County, looked out his second-story bedroom window and saw a white man with a beard standing near his garage. Hughes asked the man what he was doing, and he responded that he was trying to get a drink of water out of his

---

[1] Ky. Const. § 110.

spigot.  Hughes told the man to leave, and he did so without incident.  Hughes nevertheless called the police who responded but did not find anyone.

Shortly thereafter, an eighth of a mile away from Hughes' home, Michael McIntosh (Michael) was roused by the sound of his recently purchased 2003 Dodge Ram "dually" pickup truck being started.[2]  He looked out the window and saw a white man with a beard, who Harper conceded at trial was him, drive the truck through his yard and down the road in the direction of Shelby County.  At 1:40 am, Michael's wife called 911 to report the theft, and a "be on the lookout" (BOLO) was issued with the description of the truck and its license plate number.

Law enforcement first located the truck travelling eastbound on I-64 in Shelby County.  After confirming that the truck's license plate number matched the BOLO, a Shelby County sheriff's deputy turned on his lights and sirens and attempted a traffic stop.  The truck did not stop and fled at speeds up to 90 mph.  The deputy abandoned the chase somewhere around the Shelby County border and reported the truck's last known location to dispatch.

Soon after, Kentucky State Police (KSP) Trooper Josh Satterly (Tpr. Satterly) located and began pursuing Harper with his emergency equipment activated just before it reached a work zone in Franklin County.  Before they reached the work zone, Harper swerved and attempted to hit Tpr. Satterly's cruiser but missed.  Tpr. Satterly continued to pursue Harper as they entered

---

[2] Michael acknowledged that he left the keys in the truck, which had been left unlocked.

2

the work zone, which had its left lane blocked off with traffic barrels. To avoid the traffic in the right lane, Harper began driving through the barrels in the left lane at speeds between 90 – 100 mph, which sent the barrels flying back into Tpr. Satterly's cruiser. Toward the end of the work zone, a large piece of equipment and several workers were in the left lane. To avoid them, Harper went into the grass-covered median where he immediately lost control of the truck, spun out, and got stuck perpendicular to I-64 with the truck's front facing south and its back against the cable barrier in the median.

Tpr. Satterly and two other officers exited their cruisers and ordered Harper to exit the vehicle at gunpoint. Harper did not comply and continued trying to free the truck by spinning the tires and rocking back and forth. When he finally did, he passed one of the officer's cruisers within three feet and then continued to travel east on I-64. Meanwhile, four miles down the interstate another KSP trooper in Scott County deployed spike strips to try to stop the truck. Harper struck the spike strips, popping his front two tires. But Harper, undeterred, continued to drive with no front tires at speeds exceeding 100 mph. At this point the officers began following Harper from a distance to warn the public rather than actively chase him; they were biding their time until the truck became inoperable.

Harper continued driving east until he took Exit 115 off I-64 in Fayette County onto Newtown Pike which leads straight into downtown Lexington. When he took the exit ramp, he ran into the median but was able to right the

3

truck and keep going; he continued driving at speeds exceeding 100 mph. He then traveled about four miles down Newtown Pike until he reached a point where the road both began to curve to the right and was crossed by a set of railroad tracks. When the front metal rims of the truck crossed the railroad tracks, Harper completely lost control of the truck and was unable to make the right-hand turn. Instead, he hit a curb on the opposite side of the road and then struck a raised, triangle-shaped, concrete median that separates traffic traveling into and out of Maryland Avenue, a residential street.

When the truck hit the raised median, it became airborne, clipped the corner of a residence on the end of Maryland Avenue, struck a telephone pole in front of the residence, rolled several times, and came to rest upside down. When the truck struck the telephone pole, the transformer on the pole exploded and the truck was likewise on fire when it came to rest. Tpr. Satterly pulled Harper from the burning vehicle, dragged him away from it, and placed him under arrest. Harper told Tpr. Satterly that he "should have killed [him] when he had the chance," and also said, "I don't care what happens, I'm dying of cancer anyway." Harper was evaluated by EMS at the scene and then transported to the hospital with minor injuries. His blood test revealed he was not under the influence of drugs or alcohol.

Tragically, Harper struck the victim in this case, Anthony Moore (Moore), at some point after he lost control of the truck near Maryland Avenue. Moore was waiting for a ride to work as a sanitation worker when he was struck.

Though Moore died instantly, his body, which was next to the residence, was not discovered until law enforcement began to clear the scene.

At trial, Harper conceded that he was guilty of both fleeing and evading and receiving stolen property and focused his defense on creating reasonable doubt as to whether he committed wanton murder, i.e., whether in his operation of the truck he wantonly[3] engaged in conduct which created a grave risk of death to another and thereby caused Moore's death under circumstances manifesting extreme indifference to the value of human life.[4] He asserted that all of the events occurred in the middle of a rainless night with light traffic and few pedestrians. He also presented testimony from his cousin that he was a skilled driver and highlighted that throughout the six-county chase he did not hit any vehicles or the workers present in the Franklin County work zone.

For Moore's death, the jury was instructed on wanton murder, second-degree manslaughter, and reckless homicide. It found him guilty of wanton murder as well as receiving stolen property and fleeing and evading. The jury recommended a thirty-year sentence for the murder conviction; five years for

---

[3] Kentucky Revised Statute (KRS) 501.020(3) ("A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.").

[4] *See* KRS 507.020(1)(b).

fleeing and evading; and one year for receiving stolen property under $10,000 to run concurrently for a total of thirty years' imprisonment. He now appeals.

Additional facts are discussed below as necessary.

## II. ANALYSIS

The sole issue raised by Harper is whether the trial court erred by allowing evidence of the police pursuit prior to its entry into Fayette County. In December 2019, the Commonwealth filed a pre-trial notice of its intent to introduce evidence of what occurred during the police pursuit from its inception in Shelby County to its end in Fayette County pursuant to KRE[5] 404(b)(2), which states that

> (b) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> . . .
>
> > (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Harper objected and argued that the evidence of the pursuit prior to its entry into Fayette County was not inextricably intertwined with the Commonwealth's other evidence against him. He asserted that evidence of the pursuit should be limited strictly to what occurred in Fayette County, as that was the prosecuting jurisdiction. He contended that the evidence of what occurred in Fayette County was sufficient for the Commonwealth to prove its

---

[5] Kentucky Rule of Evidence.

6

case for wanton murder and therefore the exclusion of the bad acts that occurred outside of Fayette County would not result in a serious adverse effect on the Commonwealth. Following a hearing, the trial court ruled that the evidence was admissible; it agreed with the Commonwealth that, *inter alia*, the evidence was probative to prove that Harper acted wantonly. In the trial court's subsequent order memorializing its ruling, it explained:

> The Defendant's objection to certain evidence pertaining to the theft of the truck in Anderson County is overruled.[6] The Court concludes that the evidence is relevant and does involve facts of consequence to the disposition of the case, and that its evidence thereof is not so unfair resulting in prejudice substantially outweighing its probative value. Likewise, and for those same reasons the Court does believe that the Commonwealth may be permitted to introduce evidence at trial of the police pursuit of the subject truck prior to it entering Fayette County. The Court concludes that this evidence is inextricably interwoven with the evidence of the crime charged that its introduction is unavoidable and therefore must come in at trial.

This Court may not disturb the trial court's ruling on the admissibility of the chase evidence unless it was an abuse of discretion.[7] In other words, we must affirm the trial court unless its ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[8] It is well-established that in order to be admissible, KRE 404(b) evidence must be relevant and probative, and its probative value must not be substantially outweighed by the risk of

---

[6] The Commonwealth included in its KRE 404(b) notice its intent to introduce evidence that Harper stole the truck, to which Harper also objected. Harper has not challenged the trial court's ruling on that issue before this Court.

[7] *See, e.g., Meece v. Commonwealth*, 348 S.W.3d 627, 645 (Ky. 2011).

[8] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

7

prejudice to the defendant.[9]  Harper asserts that the evidence at issue was not inextricably intertwined with the Commonwealth's other evidence and, further, that it did not satisfy the foregoing tripart test for admissibility.  We disagree.

Recently, this Court explained that two kinds of other act evidence satisfy the description provided in KRE 404(b)(2): "(1) evidence of part of the transaction on which the criminal charge is based and (2) evidence required 'to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"[10]  We went on to say that

> [t]he key to understanding this exception is the word "inextricably." The exception relates only to evidence that must come in because it is so interwoven with evidence of the crime charged that its introduction is unavoidable.  Evidence is inextricably intertwined where two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other.  In other words, the test is whether by excluding evidence of the prior offense, it would be necessary to suppress facts and circumstances relevant to the commission of the charged offense.[11]

It is hard to imagine evidence that better fits this description than the evidence Harper sought to exclude.  Without it, the Commonwealth would be unable to explain how the truck, stolen from Anderson County, ended up in Fayette County; why police officers from several different agencies were pursuing the truck; and why the truck had deflated front tires.

---

[9] *Bell v. Commonwealth*, 875 S.W.2d 882, 889-90 (Ky. 1994).

[10] *Gasaway v. Commonwealth*, 671 S.W.3d 298, 335–36 (Ky. 2023) (quoting Leslie W. Abramson, 9 Kentucky Practice Series, Criminal Practice & Procedure § 27:168 (6th ed.)).

[11] *Gasaway*, 671 S.W.3d at 336 (internal citations and quotation marks omitted).

Moreover, evidence of the pursuit bore directly on the sole issue in the case: whether Harper acted wantonly and in a manner that manifested extreme indifference to human life. Harper engaged in a continuing course of conduct from the time he disregarded law enforcement's first attempt to stop him in Shelby County until he wrecked the truck in Fayette County. That conduct included: driving at speeds exceeding 100 mph on the interstate; attempting to hit Tpr. Satterly's cruiser; driving through barrels blocking the left lane of a work zone while speeding; taking the median to go around a large piece of equipment and workers present in the work zone; and continuing to drive the truck after his front two tires had been deflated, which decreased his ability to steer. These actions put his own life, the lives of the pursuing officers, the lives of other motorists, and the lives of the work zone personnel in great danger. The evidence also demonstrated that he had at least two particularly highlighted opportunities to stop fleeing—getting stuck in the median and the successful deployment of the spike strips—yet he refused. We therefore cannot hold that the trial court's finding that the evidence was inextricably intertwined was an abuse of its discretion.

As for the three-part test to determine the evidence's admissibility, the evidence was certainly relevant and probative for the reasons stated above. Harper asserts that the evidence's probative value was substantially outweighed by its potential to prejudice him because it allowed the jury to find him guilty of wanton murder based on an emotional response to the dangers presented by the prolonged police pursuit. We reject this argument, as the jury

9

could have properly considered the evidence of the dangers created by Harper's actions during the chase as evidence that he acted wantonly and in a manner that manifested extreme indifference to the value of human life. And, because those actions bore directly on the most significant issue that the jury was tasked with deciding, that evidence's probative value was high. The trial court accordingly did not abuse its discretion in finding that the evidence's probative value was not substantially outweighed by its potential to prejudice Harper.

### III. CONCLUSION

Based on the foregoing, we affirm.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General